**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gregory LEWIS, Defendant-Appellant.**

**No. 85–5045.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 1985.

Decided April 18, 1986.

Richard Romero, Nora Manella, Asst. U.S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Janet I. Levine, Michelson & Levine, Los Angeles, Cal., for defendant-appellant.

Before FLETCHER, PREGERSON, and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

Gregory Lewis appeals from his conviction for conspiracy, 18 U.S.C. § 371 (1982), bank larceny and killing to avoid apprehension for bank larceny, 18 U.S.C. § 2113(b), (d), (e) (1982), and for being a felon in receipt of a firearm, 18 U.S.C. § 922(h) (1982). The charges arose out of a robbery at a Los Angeles Savings & Loan and the murder of the owner of the getaway vehicle. Lewis challenges the trial court's denial of his motions to sever the receipt of firearm counts, to strike the killing charge because § 2113(e) did not apply to the facts of the case, and for a mistrial. We reverse the conviction for killing to avoid apprehension due to manifest prejudice from the failure to sever the felon in receipt counts, and affirm the other convictions.

## I. INTERPRETATION OF 18 U.S.C. § 2113(e)

Lewis claims that 18 U.S.C. § 2113(e) does not apply to the killing because it took place several hours before the robbery.[1] Apparently the getaway vehicle was secured early in the morning on the day the bank was robbed. Its owner was found in an alley, killed by three .22 caliber bullets from two different guns.

The controlling words of the statute are "avoiding or attempting to avoid apprehension for the commission of such offense [a bank larceny in this case]." We held in *United States v. Jackson*, 756 F.2d 703 (9th Cir.1985), that the statute does apply to the killing in this case. Kevin Jackson, one of Lewis's co-conspirators, was convicted of the same bank larceny and acquitted of the same murder that are at issue here. On appeal, Jackson argued that the murder charge was improper under the statute, and that its joinder prejudiced his robbery trial. We found joinder proper. 756 F.2d at 705-06. We rejected the argument that a murder hours before a robbery could not have been committed while attempting to avoid apprehension and held that "the test is not the time and place of the murder, but its relation to the robbery." *Id.* at 706. Because the "purpose of using another person's vehicle is to avoid or attempt to avoid apprehension," the murder occurred "in connection with" the robbery. *Id.*

## II. SEVERANCE OF WEAPONS COUNTS

Lewis does not dispute the propriety of joinder of the gun counts to the other charges under Fed.R.Crim.P. 8(a); one of the guns in question was used in the bank robbery by a co-conspirator. However, he claims that his motion for severance under Rule 14 was improperly denied.[2] We review for abuse of discretion.[3] *See*

---

1. § 2113(e) reads:

   Whoever, in committing any offense defined in this section [larceny], or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

2. Rule 14 of the Federal Rules of Criminal Procedure states in pertinent part:

   If it appears that a defendant or the government is prejudiced by joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

3. Lewis argues that the abuse of discretion standard does not apply when the district court fails to make any inquiry at all into the relevant factors. *See United States v. Mehrmanesh*, 689 F.2d 822, 834 (9th Cir.1982) (abuse of discretion standard not applicable where trial court failed to undertake balancing of probative value and

*United States v. DiCesare,* 765 F.2d 890, 898 (9th Cir.), *modified on other grounds,* 777 F.2d 543 (9th Cir.1985); *United States v. Irvine,* 756 F.2d 708, 712 (9th Cir.1985) (per curiam). The test is whether joinder was so prejudicial that the trial judge was compelled to exercise his discretion to sever. *United States v. Nolan,* 700 F.2d 479, 482 (9th Cir.), *cert. denied,* 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983); *United States v. Ragghianti,* 527 F.2d 586, 587 (9th Cir.1975).

■ The defendant has the burden of proving that the joint trial was manifestly prejudicial. *Irvine,* 756 F.2d at 712; *United States v. Bronco,* 597 F.2d 1300, 1302 (9th Cir.1979). The prejudice must have been of such magnitude that the defendant's right to a fair trial was abridged. *DiCesare,* 765 F.2d at 898.

Lewis asserts that he was prejudiced because evidence of his prior felony conviction would not have been admissible in a trial on the larceny and killing counts since he would not have taken the stand. He claims that evidence of the conviction and of his lying under oath when acquiring one of the guns was manifestly prejudicial because the evidence against him on the other counts, particularly the killing charge, was not overwhelming. Without the proof of his past criminal history, he suggests the jury might not have convicted him of the other counts.

■ There is "a high risk of undue prejudice whenever ... joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *United States v. Daniels,* 770 F.2d 1111, 1116 (D.C.Cir.1985). The government is prohibited from introducing evidence of a defendant's prior crimes to show that the defendant has a bad charac-

ter and is therefore likely to have committed the crime with which he is charged. Fed.R.Evid. 404(b); *United States v. McKoy,* 771 F.2d 1207, 1213 (9th Cir.1985). The use of other crimes evidence is not looked on favorably and its use must be narrowly circumscribed and limited. *United States v. Hodges,* 770 F.2d 1475, 1479 (9th Cir.1985).

Our reluctance to sanction the use of evidence of other crimes stems from the underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is. Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing.

*Id. Accord Daniels,* 770 F.2d at 1116. The danger that a jury will infer present guilt from prior convictions cannot be ignored by the court in deciding whether to sever a charge that necessitates the introduction of other crimes evidence. *See Daniels,* 770 F.2d at 1118; *see also United States v. Pietras,* 501 F.2d 182, 185 n. 1 (8th Cir.) (district court granted motion for severance on this ground), *cert. denied,* 419 U.S. 1071, 95 S.Ct. 660, 42 L.Ed.2d 668 (1974). The government does not contend that evidence of Lewis's prior conviction would have been admissible on the larceny, conspiracy and killing counts absent the joinder. *Cf. Irvine,* 756 F.2d at 712 (no prejudice where bulk of evidence admissible absent joinder); *United States v. Kenny,* 645 F.2d 1323, 1345 (9th Cir.) (same), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981).

prejudicial effect required by Fed.R.Evid. 609(a)(1) ). We do not disagree, but the order in this case shows that the judge considered the proper factors. The judge noted that evidence of all the counts was intertwined, but stated that the jury would be instructed specifically that the conviction was to be considered only on counts

three and four. This shows he had considered both judicial economy and prejudice to the defendant, the relevant factors in a severance determination. *See United States v. Kenny,* 645 F.2d 1323, 1345 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981).

Courts have used two different approaches to severance where the admission of evidence of prior crimes would be inadmissible on some of the counts. In *United States v. Busic*, 587 F.2d 577 (3d Cir.1978), *rev'd on other grounds*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), the Third Circuit stated,

> in ruling on a pre-trial motion to sever the district court should determine whether evidence of the prior convictions would be independently admissible on the other counts. If it is determined that the convictions would not be admissible on the other counts—that were these counts to be tried alone the jury would not hear this evidence—then severance should be granted.

*Id.* at 585 (footnote omitted).

Other circuits have not adopted a *per se* rule,[4] but instead examine the record for undue prejudice on a case-by-case basis. *See Daniels*, 770 F.2d at 1118; *United States v. Valentine*, 706 F.2d 282, 290 (10th Cir.1983); *Panzavecchia v. Wainwright*, 658 F.2d 337, 341–42 (5th Cir.1981). We agree that a *per se* rule is inappropriate but recognize that the danger that the jury's perception of the defendant will be adversely affected by the evidence of the prior crimes is so strong as to create a presumption favoring severance. It is much more difficult for jurors to compartmentalize damaging information about one defendant derived from joined counts, *see Ragghianti*, 527 F.2d at 587, than it is to compartmentalize evidence against separate defendants joined for trial. Studies have shown that joinder of counts tends to prejudice jurors' perceptions of the defendant and of the strength of the evidence on both sides of the case. *See* Tanford, Penrod & Collins, *Decision Making in Joined Criminal Trials: The Influence of Charge Similarity, Evidence Similarity, and Limiting Instructions*, 9 Law and Human Behavior 319, 331–35 (1985); Bordens & Horowitz, *Joinder of Criminal Offenses:*

*A Review of the Legal and Psychological Literature*, 9 Law and Human Behavior 339, 343, 347–51 (1985).

■ We disagree with Lewis's contention that the evidence on the larceny count was not overwhelming. It showed that he was present at the planning meetings, his gun was used inside the bank, his effects were found in the get-away van, and he abandoned his apartment and moved to Mexico under an assumed name. Evans, one of the other robbers, testified convincingly and graphically as to Lewis's participation in the bank robbery.

■ We agree, however, that the evidence is sparse on the killing charge. We know that during the planning for the robbery, Lewis was present at a meeting where there was a conversation that suggested that the robbers might have to "take someone out" to obtain a getaway vehicle. Whether he heard the remark is not known; there was testimony that he was not a participant in the conversation. There was evidence that Lewis supplied weapons and ammunition for the conspiracy. We know that the body of the owner of the getaway vehicle was shot with three .22 caliber bullets from two different guns. Twenty-two-caliber bullets were found in Lewis's apartment and in the van, but his gun was not used for the killing. There was evidence that the bullets may have come from the same box as those in Lewis's apartment. No other evidence suggests that Lewis was the killer or that, from his perspective, the killing was a foreseeable part of the robbery plan.

■ Lewis's prior conviction that came into evidence on the gun counts was for first degree burglary. The evidence on the gun counts also included the fact that Lewis had lied under oath to secure one of the guns. These offenses were not particularly probative on the murder charge but in the jury's mind certainly were evidence of Lewis's bad character. The prosecutor at

---

4. The *Busic* court itself found the refusal to sever to be harmless error, despite the evidence of the prior crimes. 587 F.2d at 585.

the very outset of the trial in her opening statement capitalized on this evidence as she "introduced" the people involved in the case. She began, "[f]irst, there is the defendant, Gregory Lewis. He's also known in some circles as Marzuk Shariff, also recently as George Harris. He is a convicted felon."

The court did not instruct the jury to consider the evidence as to each count separately until the third day of the trial; the caution was repeated once later the same day.[5] We share the D.C. Circuit's skepticism of the efficacy of such instructions no matter when they are given.

> To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities.

*Daniels,* 770 F.2d at 1118.

Here, the admonishments were given in the waning moments of the trial and did not specifically impress upon the jury its duty to ignore prior convictions in determining guilt. We are faced with a trial in which the defendant is charged with a very serious and cold-blooded crime—killing to secure a getaway vehicle—but the evidence against him on the killing charge is weak. The prosecutor understandably seeks to paint as evil a picture of the defendant as possible at the first possible moment. The joinder of the gun counts provides the vehicle. Practically the first words the prosecutor uttered were "He is a convicted felon." It was three days before the jurors were admonished that they should consider the evidence as to each count discretely. The instruction that the stipulation as to the prior conviction should not be con-

sidered on the killing charge was less than emphatic. We conclude that the failure to sever the gun counts in the context of this trial manifestly prejudiced Lewis's chance for acquittal on the killing charge.

## III. INSUFFICIENT EVIDENCE

■ Lewis contends that there was insufficient evidence to convict him of the § 2113(e) charge. Even though we reverse that conviction, we must address the sufficiency of the evidence supporting it, for if the evidence were insufficient, retrial is barred by the Double Jeopardy Clause. *United States v. DiCesare,* 765 F.2d at 900.

■ The relevant inquiry "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. *United States v. Talbert,* 710 F.2d 528, 530 (9th Cir.1983) (per curiam), *cert. denied,* 464 U.S. 1052, 104 S.Ct. 733, 79 L.Ed.2d 192 (1984); *United States v. Thomas,* 453 F.2d 141, 143 (9th Cir.1971) (per curiam), *cert. denied,* 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972). However, mere suspicion or speculation cannot be the basis for creation of logical inferences. *Thomas,* 453 F.2d at 143.

■ The jury was instructed that Lewis could be found guilty of killing on a conspiracy theory. A co-conspirator is responsible for any act done in furtherance of the conspiracy unless it could not reasonably be foreseen as a natural consequence of

---

**5.** Incident to receipt of a stipulation that Lewis had been previously convicted of first-degree burglary, a felony punishable by a term of imprisonment exceeding one year, the court instructed the jury, "Ladies and Gentlemen, I should inform the Jury that while that stipulation is received, it's received and is relevant only as to Counts Three and Four. And it's not received with relationship to or is to be considered by the Jury for any purpose other than Counts Three and Four."

As part of its instructions prior to argument the court said:
> As you have noted, a separate crime is charged in each count of the indictment. Each offense and the evidence applicable thereto should be considered separately. The fact that you may find the defendant guilty or not guilty as to one of the offenses charged should not control your verdict as to any other offense charged.

the agreement. *Pinkerton v. United States,* 328 U.S. 640, 647–48, 66 S.Ct. 1180, 1184–85, 90 L.Ed. 1489 (1946). In this case, the prosecution had to prove that Lewis belonged to a conspiracy, that the killing was committed by a member of the conspiracy in an attempt to avoid apprehension for the bank larceny, and that such a killing could reasonably be foreseen as a natural consequence of the conspiracy. We conclude that the evidence would·support Lewis's conviction for killing committed in furtherance of the conspiracy.[6] *See United States v. Steel,* 759 F.2d 706, 713 (9th Cir. 1985).

Lewis contends that there was insufficient evidence that the killing either was committed to avoid apprehension for the bank robbery or was reasonably foreseeable. Use of the van in the robbery is sufficent evidence to find the killing a part of an attempt to avoid apprehension as required by § 2113(e). *See Jackson,* 756 F.2d at 706. The conversation concerning the procurement of a getaway vehicle, in conjunction with evidence that Lewis supplied a weapon and ammunition, suggest that the killing was foreseeable. Although Lewis claims that there is no evidence that he heard or understood the·"taking out" language, there is no evidence to the contrary. A jury could rationally conclude that he heard and understood, particularly as there was evidence suggesting that Lewis was the leader of the operation. In any event, if the jury believed that Lewis supplied the conspirators with bullets and guns, it could rationally conclude that a killing was reasonably foreseeable.

### IV.  MISTRIAL

■ Lewis alleges that the trial judge erred in refusing to grant a mistrial after an outburst by Evans (one of the conspirators) in court:

"one thing I would like to ask the Judge, if you don't mind. I would like to say this to Mr.—to Gregory. I would appreciate it, brother, in the name of the law[7] · if you could make it plain that I didn't want to do—didn't want to have nothing to do with this robbery. I didn't want to have anything to do with it. This was all Derrick and you and Norman's plan on this robbery. And that I was lied to, misled, framed, threatened, and forced. If you would just tell the truth, I feel better doing fifteen years, 2,000 miles away from my babies."

We review a trial judge's denial of a mistrial for abuse of discretion. *United States v. Charmley,* 764 F.2d 675, 677 (9th · Cir.1985).

■ Lewis alleges a mistrial was necessary for two reasons. First, he claims that Evans's comment was effectively a comment on Lewis's refusal to testify. Second, he claims that the statement informed the jury that Lewis was a Moslem, and so was highly prejudicial. Neither of these reasons was specifically raised before the trial court below. Counsel merely stated that Evans's remarks were "non-responsive" and "damaging" when he requested a mistrial. "Motions for mistrial must be specific as to their bases in order to be valid; accordingly, the failure to grant equivocal motions cannot be cited as error on appeal." *United States v. Lopez,* 575 F.2d 681, 683 (9th Cir.1978). Moreover, counsel did not ask for a jury instruction to minimize the supposed damage caused by Evans's comment.

Even if Lewis's objection was specific enough to preserve his claims, a mistrial was not required. Lewis does not allege that the prosecution encouraged or even had prior knowledge of Evans's outburst. There are no cases holding that an uninvit-

---

**6.** The evidence to convict Lewis on this theory consisted of the vehicle owner's murder (the bullet-riddled body stripped of identification was found in an alley covered with debris), Lewis's participation in the larceny, the use of the vehicle and a gun supplied by Lewis in the larceny, the use of bullets similar to those found in Lewis's apartment, and the conspirators' conversation that referred to the possibility of "taking someone out" to obtain a vehicle.

**7.** Lewis's counsel claims the statement was ". . . in the name of Allah" rather than ". . . in the name of the law."

ed, unanticipated statement by a prosecution witness is equivalent to a forbidden comment by the prosecution on the defendant's failure to testify. *Cf. Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). Furthermore, the test to judge impermissible comment upon a defendant's assertion of his Fifth Amendment right not to testify "is whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *People of the Territory of Guam v. Ojeda*, 758 F.2d 403, 406 (9th Cir.1985); *United States v. Fleishman*, 684 F.2d 1329, 1343 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). This test is not met in this case.

The assertion regarding revelation of the defendant's religion is also meritless. Even if it occurred, the witness's referral to Allah did not necessarily indicate defendant's religious beliefs, merely his own. The trial judge did not abuse his discretion in denying the motion on that ground.

### CONCLUSION

We reverse the killing conviction because of prejudice caused by the failure to sever, and remand for a new trial on the § 2113(e) charge.[8] We affirm the convictions for conspiracy, bank larceny, and receipt of firearms.

AFFIRMED in part, REVERSED and REMANDED in part.

---

8. Lewis also claims that the court's instruction on aiding and abetting would have allowed the jury to find him guilty of murder if he merely aided and abetted the larceny, and was therefore reversible error. Because we are reversing the killing count, we need not decide whether the aiding and abetting instruction was error. For the benefit of the trial court on retrial, we briefly set out the applicable standards.

The aiding and abetting instructions must make it clear that for Lewis to be found guilty of murder, he must have participated by omission or commission in bringing about the crime and he must have had knowledge that the principal or principals intended acts that could re-

sult in killing as part of an attempt to avoid apprehension for the larceny. *See United States v. Wright*, 742 F.2d 1215, 1222 (9th Cir.1984); *United States v. Jones*, 678 F.2d 102, 105 (9th Cir.1982). "It is not enough for the jury to find that the defendant aided and abetted a bank robbery in which a killing occurred." *Jones*, 678 F.2d at 106. Failure to make this clear is reversible error. *Id.* However, the required information does not all have to be contained in one instruction. It is sufficient to define the elements of the crime in one instruction, and then to describe separately the necessary participation of the defendant. *See Wright*, 742 F.2d at 1222.