UNITED STATES of America,
Plaintiff-Appellee,

v.

Johnny BRONCO, Defendant-Appellant.

No. 78–1473.

United States Court of Appeals,
Ninth Circuit.

June 1, 1979.

Donald B. Marks of Marks & Brooklier, Beverly Hills, Cal., for defendant-appellant.

Rodney M. Perlman, Sp. Atty., Los Angeles Strike Force Organized Crime etc., Los Angeles, Cal., for plaintiff-appellee.

Before ELY and TRASK, Circuit Judges, and SOLOMON,\* District Judge.

SOLOMON, District Judge.

Johnny Bronco, appellant, was found guilty of three counterfeiting charges: con-

spiracy, possession and passing counterfeit money. These charges resulted from two independent sets of events. Bronco contends that the District Court erred when it denied his motion to sever the trial of the charge based on one set of events from the trial of the charges based on the other set of events. We agree.

Bronco was indicted for conspiracy to sell $3,000,000 in counterfeit money from July to September 1975. In the two other counts he was charged with possession of a counterfeit $100 bill on November 20, 1975 and with passing that bill with the intent to defraud.

Bronco moved to sever the conspiracy count from the other two counts before trial. The District Court denied Bronco's motion after the government represented that it would prove that the sample counterfeit bills used in the conspiracy and the $100 bill passed in November came from the same manufacturer.

On the day before trial, the United States Attorney conceded that the government would not be able to prove that the bills came from the same source. Bronco renewed his motion to sever and later he raised the severance question in his motion for a judgment of acquittal. After the jury found him guilty on all three counts, Bronco raised it again in his motion for a new trial.

■ Bronco first contends that the initial joinder of these two offenses was improper. We disagree. All three offenses are counterfeiting offenses and therefore similar. Rule 8(a) of the Federal Rules of Criminal Procedure specifically authorizes the initial joinder of offenses of a "similar character".

Bronco next contends that the District Court abused its discretion when it denied his motion to sever under Rule 14 of the Federal Rules of Criminal Procedure. Rule 14 provides that, "[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses . . . the court may order . . . separate trials."

---

\* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

A denial of a motion to sever is reversible error only when a defendant demonstrated in the trial court that a joint trial would be "manifestly prejudicial". *United States v. Brashier,* 548 F.2d 1315, 1323–24 (9th Cir. 1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977).

Bronco, in the District Court, argued that a joint trial would prejudice him because the same jury would hear the evidence of all crimes and he would not be able to testify about one set of events without being cross-examined about the other. He also argued that little or no overlap in proof would be avoided by a joint trial.

Here Bronco was connected with the conspiracy only by the testimony of the two co-conspirators, Nicholson and DiRodio, neither of whom was particularly credible.

Nicholson testified that Bronco introduced him to Matteo and that they discussed the sale of counterfeit money. Nicholson said Bronco asked him and Matteo to meet with Joaquin, the potential buyer. Nicholson and Matteo met with Joaquin. They showed Joaquin some sample bills and agreed to sell him $3,000,000 in counterfeit bills.

Nicholson also testified that Bronco later met him, told him that Joaquin was working with the police, assaulted him, and called off the sale.

Nicholson's testimony contradicted several sworn statements he made before trial.

The other co-conspirator, DiRodio, testified that he put Bronco in touch with Nicholson.

Both DiRodio and Nicholson pleaded guilty to a separate conspiracy to transport stolen securities. In addition, Nicholson pleaded guilty to this aborted counterfeiting conspiracy.

Matteo, who was called by the defense, testified that neither he nor DiRodio had $3,000,000 in counterfeit money and that they were setting Joaquin up to steal his money. Matteo also testified that Bronco was not involved.

The court permitted the government, on cross-examination, to attempt to show that Bronco is a violent man and that Matteo is afraid of him.

The jury had to choose between the testimony of these unconvincing witnesses.

On the other charges, the government introduced evidence to show that Bronco passed a counterfeit $100 bill on November 20, 1975. Migliorino testified that on that date they went to dinner at the Westlake Inn and that Bronco paid the check. On cross-examination, he admitted that he was not sure of the date. A waitress testified that, on November 20, she served Migliorino and a man who looked like Bronco, and that the check was paid with a $100 bill. There was also testimony that only one $100 bill was deposited that night and it was counterfeit.

The only evidence that Bronco knew that the bill was counterfeit and that he had an intent to defraud was evidence that he participated in the conspiracy.

Bronco contends that he was prejudiced in his defense of the possession and passing charges by the evidence of the conspiracy and by the allusion of violent intimidation in connection with the conspiracy. He also contends that evidence of the $100 counterfeit bill transaction prejudiced him in defense of the conspiracy charge.

The government does not deny that evidence of the possession and passing of the $100 bill could not have been introduced at a separate conspiracy trial. But the government contends that the evidence of the conspiracy would have been admissible at a separate possession and passing trial, under Rule 404(b) of the Federal Rules of Evidence, to establish Bronco's knowledge and intent.

Although Rule 404(b) permits evidence of other crimes to prove intent, such evidence is not always admissible. This court has stated that evidence of other crimes is only admissible to prove intent if:

"(1) the prior act is similar and close enough in time to be relevant, (2) the evidence of the prior act is clear and

convincing and (3) . . . the probative value of the evidence outweighs any potential prejudice." *United States v. Brashier,* 548 F.2d at 1325.

If Bronco's alleged participation in this conspiracy is sufficiently similar to the possession and passing charges to be relevant on the issues of knowledge and intent, this evidence is admissible only to the extent it is clear, convincing and more probative than prejudicial. And if at a separate trial on the substantive counts the court would have admitted some evidence of the conspiracy; it would not have permitted the extensive testimony that was introduced at the joint trial on the conspiracy and Bronco's alleged violent conduct. In our view, Bronco's defense was prejudiced by this joint trial.

■■ Ordinarily joint trials are permitted to promote judicial economy in spite of the dangers that the jury will be influenced by all the evidence in ruling on each charge. An accused should show the specific testimony he will present about one offense, and his specific reasons for not testifying about others, to justify severance. *Baker v. United States,* 131 U.S.App.D.C. 7, 25–26, 401 F.2d 958, 976–77 (1968), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). Here the overlap of evidence at separate trials for these offenses would not be significant. At a trial on the substantive counts evidence of the conspiracy would be limited to the issues of intent and knowledge, and would be admissible if clear, convincing and more probative than prejudicial. We believe that under these circumstances, it was an abuse of discretion not to grant the motion for severance when clear prejudice would result from a joint trial.

Because the case will probably be retried, we comment on two other claims of error.

Bronco contends that the trial court erroneously refused to give him a portion of co-conspirator Nicholson's presentence report. The United States Attorney had a copy of this report. Bronco contends that Nicholson's version of this offense from this report may be inconsistent with the version presented at trial and therefore useful for impeachment.

■ We express no opinion on whether a defendant is ever entitled to a witness' presentence report. The report was included in the record on appeal and both parties asked us to examine it. In our view, the report contains nothing useful to the appellant.

■ Bronco moved for a mistrial during the cross-examination of Matteo about violent intimidation. Although it would have been better if the United States Attorney had refrained from this type of cross-examination, the denial of Bronco's motion for a mistrial was not reversible error.

Because the District Court erred in not granting Bronco's motion for severance, the judgment of conviction is reversed and the case remanded for a new trial.

REVERSED.